Filed 1/26/26  P. v. Greenberg CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ZACHARY GREENBERG,<br><br>        Defendant and Appellant. | A167529<br><br>(San Mateo County<br>Super. Ct. No. 20NF012949A) |

Zachary Greenberg, who is serving a six-year prison sentence after a jury found him guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)[1]), challenges one component of his sentence: a three-year enhancement for having inflicted great bodily injury (§ 12022.7, subd. (a)). He contends the trial court abused its discretion by declining to dismiss the enhancement on the basis that his offense was connected to a mental illness and/or childhood trauma.  Those are among the circumstances to which, if proven, a court must give "great weight" in deciding whether to dismiss an enhancement—unless the court finds that such dismissal will "endanger public safety."  (§ 1385, subd. (c)(2) (hereafter section 1385(c)(2)).)  The trial

---

[1] Undesignated statutory references are to the Penal Code.

1

court in this case so found, and it did not thereby abuse its discretion.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Assault*

On an evening in August 2020, Greenberg and his girlfriend were in a line of people waiting on the sidewalk to get takeout food from a restaurant in Half Moon Bay, when Nicolas M. (Nico) approached, riding his bicycle on the sidewalk.[2]  Nico rang his bike's bell and asked people to move so he could ride by.  Greenberg refused.  Nico demanded again that he move, and Greenberg reiterated that he was " 'not fucking moving,' " while Greenberg's girlfriend told Nico to ride on the street.  Nico said something to the effect that as a local he was entitled to ride his bike on the sidewalk, and that Greenberg and his girlfriend must be outsiders.

A fight ensued.  Witness accounts varied on details but agreed that Nico—who was larger than Greenberg, drunk, and aggressive—began the fight by grabbing or shoving Greenberg or by ramming him or his girlfriend with his bike.  An expert witness testified that, given Nico's stipulated blood alcohol content of 0.136 as measured 90 minutes after the incident, and his weight and gender, he likely had a blood alcohol content of 0.162, the equivalent of nine drinks, at the time of the incident.

Nico repeatedly pushed Greenberg, each threw punches, and either Nico pushed Greenberg, or he slipped, down a rocky embankment separating the sidewalk from the beach.  As Greenberg got up, and Nico either stood or moved toward him atop the slope, his girlfriend pulled on Nico's sweater,

---

[2] To protect his privacy, we refer to the victim by his first name and last initial, and thereafter by his nickname.  (Cal. Rules of Court, rule 8.90(b)(4) & (10).)  Undesignated rule references are to the California Rules of Court.

Nico stumbled, and the sweater fell over Nico's head, thereby obscuring his vision. Nico called Greenberg's girlfriend, who is Black, a " 'n[*****].' "[3] As Nico regained his footing, he saw Greenberg come at him with a knife. Greenberg stabbed him four times in the head and abdomen, paused briefly, then stabbed him a final time in the diaphragm.

Nico required surgery to repair a cut to his diaphragm and laceration of his abdominal wall. He also suffered head injuries including three lacerations, hematomas, and fractures of his skull's frontal bone.

*The 2019 Berkeley Incident*

Eighteen months earlier at Sproul Plaza on the UC Berkeley campus, Greenberg was filmed punching a conservative activist in the face. The victim was seated at a table, wore a t-shirt that said, " 'Socialism Sucks' " and held a sign reading, " 'Hate Crime Hoaxes Hurt Real People.' " Greenberg walked up, flipped over the table, argued with the victim, and then—as the trial court put it—"cold-cock[ed]" him, while saying, " 'Racist little ignorant bitch. Fuck you.' " The victim suffered a black eye.

*Charges and Jury Trial*

Regarding the Half Moon Bay incident, the San Mateo County District Attorney charged Greenberg by information with attempted murder (§§ 664, 187, subd. (a)) and assault with a deadly weapon (§ 245, subd. (a)(1)), alleging as to each offense that Greenberg committed it while on bail (§ 12022.1) (in a pending case based on the Berkeley incident) and inflicted great bodily injury (§ 12022.7, subd. (a)). As to the assault charge, the information alleged Greenberg had engaged in violent conduct indicating he posed a serious danger to society (§ 1170, subd. (b)(2); see rule 4.421(b)(1)).

---

[3] Testimony on this point conflicted, but the trial court found it likely, and assumed for sentencing purposes, that Nico did use the slur.

The court bifurcated trial, ordering a jury trial of the charges and the great bodily injury allegation and a court trial of the allegations supporting the on-bail enhancement and rule 4.421(b)(1) aggravating circumstance, as to which Greenberg waived his right to a jury.

*Verdict and Sentencing*

The jury acquitted Greenberg of attempted murder but found him guilty of assault with a deadly weapon and found true the great bodily injury allegation. The court found true the allegations tried to it.

For sentencing purposes, Greenberg submitted evidence including a May 2019 letter from a therapist—written for the Berkeley case—stating that he had engaged in psychotherapy with an anger management component for the preceding seven weeks.

Greenberg also submitted a report by psychiatrist Jess Ghannam.[4] Dr. Ghannam concluded "with reasonable medical certainty" that he has "a significant, chronic mental illness consistent with the DSM 5 Diagnosis of Bipolar 2 [Disorder], and Major Depressive Disorder," related to an "extensive, and well documented, family history of severe mental illness [on both sides] . . . and multiple significant traumatic exposures . . . from childhood through adulthood." Ghannam described a traumatic childhood in which mental illness prevented both of Greenberg's parents from caring for him effectively, his older brother often savagely beat him, and Greenberg began to suffer symptoms of mental illness at age eight. In the year before his arrest, Ghannam noted, Greenberg was "increasingly agitated, paranoid, and fearful of being attacked," filing "numerous police reports because he

---

[4] Certain facts are derived from the confidential clerk's transcript filed by Greenberg. However, we find that Greenberg has opted not to keep such materials confidential because he cites and discusses such facts in his briefs (see rule 8.47(c)(1)).

4

feared for his life and believed he was being followed and stalked." Ghannam deemed these behaviors "consistent with symptoms of Bipolar 2 disorder" and found them with reasonable medical certainty to be "materially connected to and associated with his most recent arrest."

The court denied probation and sentenced Greenberg to six years in prison, comprising a three-year midterm for assault with a deadly weapon plus three years for the great bodily injury enhancement, while staying imposition of sentence on the on-bail enhancement. The court declined Greenberg's request to dismiss the great bodily injury enhancement (§ 1385(c)(2)), finding that dismissal would endanger public safety and that the offense was not connected to mental illness or childhood trauma. Greenberg appealed.

## DISCUSSION

### I. Legal Standards and Standard of Review

Section 1385, subdivision (c) requires a court (with an exception not relevant here) to "dismiss an enhancement if it is in the furtherance of justice to do so." (§ 1385, subd. (c)(1).) "In exercising its discretion under this subdivision," the statute states, a court "shall consider and afford great weight to evidence . . . that any of [nine] mitigating circumstances . . . [is] present." (§ 1385(c)(2).) "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety" (*ibid.*), which the statute defines to mean "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Ibid.*) The listed mitigating circumstances include that the offense is connected to "mental illness" or "childhood trauma" (§ 1385, subd. (c)(2)(D) & (E)).

5

If a court finds that striking an enhancement would endanger public safety, it need not give great weight to evidence of the listed mitigating circumstances when deciding whether to dismiss the enhancement. (*People v. Walker* (2024) 16 Cal.5th 1024, 1033 (*Walker*).) Indeed, "in most cases," our Supreme Court recently emphasized, " 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice,' notwithstanding the applicability of any mitigating factors identified in [section 1385,] subdivision (c)(2)." (*Ibid.*)

In general, we review a decision whether to strike an enhancement for abuse of discretion and "will not reverse the ruling unless it ' "is so irrational or arbitrary that no reasonable person could agree with it." ' " (*People v. Flores* (2021) 63 Cal.App.5th 368, 376.) We thus may not reverse merely because reasonable people might disagree with the ruling. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) More particularly, as Greenberg concedes, precedent indicates we review a finding that dismissal would endanger public safety for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298; see also *People v. Garcia* (2024) 101 Cal.App.5th 848, 856 [citing *Mendoza*, in case involving another sentencing statute, as example of how courts of appeal "review for an abuse of discretion a superior court's risk determination under . . . ameliorative sentencing legislation"].)

Here, as noted, the trial court declined Greenberg's request to strike the great bodily injury enhancement for two independent reasons: (1) it found that dismissal would endanger public safety, and (2) it concluded that Greenberg had not proven that his offense was connected to mental illness or to childhood trauma. Greenberg does not dispute that the first finding, if upheld, compels affirmance. (He does not contend, in other words, that this

6

is the rare case in which the interests of justice warrant a dismissal *even though* it would endanger public safety. (Cf. *Walker*, *supra*, 16 Cal.5th at p. 1033.))

Accordingly, because we conclude that the trial court did not abuse its discretion in finding a likelihood that dismissal "would result in physical injury or other serious danger to others" (§ 1385(c)(2)), we need not review its ruling that Greenberg's offense was not connected to his undisputed mental illness or childhood trauma.

## II. Additional Procedural Background

In the trial court, Greenberg filed a lengthy sentencing brief, but his only argument addressing whether it would endanger public safety to dismiss the enhancement was one he does not repeat on appeal.[5] His brief's introduction, however, prefigured his current claim by arguing that "the repetition of a series of events such as these is entirely improbable," and it is unlikely he "will be attacked randomly again." Greenberg made those points in trying to establish a factor favoring probation, namely, that his crime resulted from an unusual circumstance, like great provocation, that is not likely to recur (rule 4.414(a)(7)). He assaulted Nico, he argued, only after having, in recent months, received multiple violent threats from strangers because conservative media publicized the Berkeley incident and someone doxxed him and, just before the stabbing, having been assaulted by a larger, drunken man who called his girlfriend a " 'n[*****]' " when she tried to protect him. At the sentencing hearing, his counsel repeated that argument.

---

[5] Greenberg argued that section 1385(c)(2)'s "public safety" exception requires a likelihood that dismissal "would result in physical injury or other serious danger" to *specific* other persons.

The trial court was unpersuaded. In offering its initial "take on this case," the court stated: "The facts of the case and . . . of the case in Berkeley show that, unfortunately, [Greenberg] either cannot or will not contain his anger. [This case] was a violent attack with a knife, which caused serious injuries and was completely unnecessary . . . . [¶] [Defense counsel contends] that the two incidents . . . were the results of events or stimuli that will not reoccur. The problem that I have is that . . . when we all go through life, we all see all kinds of unpleasant stimuli and people, which can cause one to react. [¶] And the problem I see is that the defendant's rage and inability to control his anger makes putting him out into society a serious risk because of the stimuli that we all see in our lives. [¶] . . . [I] agree that [Nico] initiated the physical contact . . . either by putting his hands on Mr. Greenberg to move him out of the way or running the bike into . . . [him] or [his girlfriend]. [¶] But much worse was the stabbing by Mr. Greenberg, which caused serious injuries. . . . It was an attack with a knife that never should have happened. And, again, . . . it was all because of Mr. Greenberg's anger."

The court then made further, lengthy, thoughtful comments analyzing several legal issues turning on common facts, including whether to grant probation, to strike the great bodily injury enhancement, and to impose a low or middle term. In particular, when it addressed the enhancement, the court held that dismissal "would not be in furtherance of justice in view of the extreme level of violence in this case and because of the attack in Berkeley," noting that Nico suffered multiple injuries that each could have warranted a great bodily injury enhancement. "Turning to the public safety issue," the court stated, given "Greenberg's violent actions in this case and at UC Berkeley, I believe that not imposing the enhancement would endanger public safety, and there [is] a likelihood that the dismissal of the enhancement

8

would result in physical injury or serious danger to others. [¶] . . . Mr. Greenberg directs his rage at others, and he can't control it, and I think the only way to prevent injury to others for as long as I can is to impose the enhancement."

Finally, in addressing whether to impose a low or middle term, the court noted an aspect of the Berkeley case that also supports its public safety determination. Greenberg "cold cocked the victim," the court observed, "and one of the things that really was troubling, if not scary, was the look on Mr. Greenberg's face, the anger, the rage on it [that] was really frightening." In response to an argument that the victim had been a conservative provocateur trying to goad liberal students to attack him, the court observed that dozens of people in the busy Sproul Plaza "walked by and did not engage," but Greenberg showed "an unwillingness or inability to control his anger." The court also pointed out "another problem" related to the Berkeley case, namely, that by the time he assaulted Nico, Greenberg "had already undergone psychotherapy and anger management back in 2019 after the Berkeley incident, and it didn't work. [¶] So how am I supposed to know if it's going to work now?"

## III. Analysis

The court's articulation of its sentencing decisions and the reasons therefor show it was well aware of the factors it was required to assess in exercising its discretion—including whether dismissal of the enhancement would endanger public safety—and analyzed those factors. The court stated that it had "thought about this case a lot . . . because this is one of the more serious and significant trials that I've had in over 22 years as a judge," and that it had watched the video of the fight with Nico 10 times or more; rewatched the Berkeley video; and read Greenberg's substantial filings.

9

On appeal, Greenberg has not shown the court abused its discretion in finding a likelihood that dismissing the enhancement would result in physical injury or other serious danger to others. (§ 1385(c)(2).) Substantial evidence supports the court's findings that Greenberg's unilateral resort to violence in Berkeley, and unilateral escalation of a fistfight into a potentially lethal knife assault in this case, reveal an inability or unwillingness, when provoked, to control his anger; that the failure of anger management therapy after the first incident created a serious doubt whether he could learn to do so after the second; and that the court's duty to protect public safety thus required it to incapacitate Greenberg for as long as the law enabled it to do.

Greenberg's central point on appeal is not without some force: before he stabbed Nico, he did endure significant provocation when Nico drunkenly assaulted him for refusing to vacate a public sidewalk and then directed a vile slur at his girlfriend when she tried to protect him from further attack by a larger man facing him, at that point, down a slope. But the court knew of and addressed those facts. They show at most that a reasonable jurist could have ruled differently—not that the court acted arbitrarily or irrationally in finding that Greenberg's conduct here and in Berkeley reveal an unwillingness or inability to control his rage, and that dismissing the enhancement would thus create a likelihood of physical injury or other serious danger to others. (§ 1385(c)(2); see *People v. Carmony*, *supra*, 33 Cal.4th at p. 377 [court may not reverse decision about whether to strike enhancement just because reasonable people can disagree]; *People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322 [decision will be affirmed unless court "exercised its discretion in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage of justice"].)

Greenberg contends that Nico's undisputed provocation—and the Berkeley victim's alleged intent to goad liberal students to violence for political purposes—amount to "mitigating circumstances" for each assault. This argument misapprehends the nature of the "public safety" inquiry required by section 1385(c)(2). The statute calls not for a retrospective moral assessment of the degree of blameworthiness of a defendant's conduct—or of his degree of responsibility for the root psychological causes of that conduct—but instead for a prospective, factual assessment of the likely effect of dismissal on public safety. (§ 1385(c)(2) [referring to "find[ing] that dismissal . . . would endanger public safety"].) While the exact circumstances that provoked Greenberg to violence in the Berkeley case and in this case are unlikely to recur, the trial court did not abuse its discretion by reasoning that as "we all go through life, we all see all kinds of unpleasant stimuli and people, which can cause one to react," and in finding as a result that Greenberg's "rage and inability to control his anger make[] putting him out into society a serious risk."

## DISPOSITION

The sentence is affirmed.

11

PETROU, J.

WE CONCUR:

TUCHER, P. J.

RODRÍGUEZ, J.

*People v. Greenberg* / A167529